UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| AMANDA C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-00196-KMB-SEB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Amanda C. initially applied for disability insurance benefits from the Social Security Administration ("SSA") on July 26, 2019, alleging an onset date of June 1, 2015. [Dkt. 7-3 at 2.] Her application was denied initially and on reconsideration. [*Id.* at 12, 28.] Amanda appeared at a hearing before Administrative Law Judge Jessica Inouye (the "ALJ") on February 11, 2021. [Dkt. 7-2 at 34.] The ALJ issued a decision on May 18, 2021, concluding that Amanda was not entitled to receive disability benefits. [*Id.* at 26.] The Appeals Council denied review on October 25, 2021. [*Id.* at 2.] Amanda timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. [Dkt. 1.]

**I.   STANDARD OF REVIEW**

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

1

(2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [her] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work, and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.   BACKGROUND

Amanda was born in 1981 and was thirty-three years old on the alleged onset date.[2] [Dkt.

---

[2] The relevant evidence of record is amply set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

7-3 at 2.] The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a) and concluded that Amanda was not disabled. [Dkt. 7-2 at 19-26.] Specifically, the ALJ found as follows:

- At Step One, Amanda had not engaged in substantial gainful activity[3] since the application date of July 26, 2019. [*Id.* at 19.]

- At Step Two, Amanda's severe impairments through the application date are as follows: depression/schizoaffective/bipolar disorder, anxiety disorder, and drug and alcohol abuse. [*Id.*]

- At Step Three, that no listings were met or medically equaled. [*Id.* at 20-21.]

- After Step Three but before Step Four, Amanda had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can learn, understand, remember, and carry out simple work instructions and make simple work related decisions; she should work in a routine work environment with occasional changes; the work should not be fast paced, timed production or hourly quotas, but she can work at a moderate or slower pace, including allowing for end of day goals; she can tolerate occasional work with the general public that is brief and superficial and occasional interactions with coworkers, but interactions should not be those featured in team work or tandem work; she can tolerate supervision commonly found in unskilled competitive work, such as when supervisor or designee demonstrates work tasks in the introductory period and then occasional work-related interactions thereafter." [*Id.* at 21-22.]

- At Step Four, Amanda had no past relevant work. [*Id.* at 24.]

- At Step Five, relying on testimony of the vocational expert ("VE") and considering Amanda's age, education, work experience, and RFC, Amanda could perform the following jobs that existed in significant numbers in the national economy: cleaner II, hand packager, and store laborer. [*Id.* at 25.]

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a), (b).

4

## III.   DISCUSSION

In seeking judicial review, Amanda contends that the ALJ erred in two ways. [Dkt. 13 at 1.] First, Amanda contends that the ALJ erred at Step Two by finding that her ADHD[4] was not a medically determinable impairment and that this error prevented the ALJ from properly comparing Amanda's ADHD against Listing 12.11. [*Id.* at 14.] Second, Amanda contends that the ALJ's RFC analysis did not adequately incorporate Amanda's limitations as presented in the record or adequately consider the impact of supportive services on Amanda's functioning. [*Id.* at 20]. The Court will address the issues as necessary to resolve the appeal, beginning with an issue that is dispositive.

### A. The ALJ erred by failing to adequately confront evidence regarding Amanda's ADHD.

Amanda argues that the ALJ erred at Step Two when she found that Amanda's ADHD was not a medically determinable impairment, failing to adequately evaluate evidence providing "strong support" that Amanda does in fact meet Listing 12.11.[5] [*Id.* at 14.] Amanda further argues

---

[4] ADHD stands for "Attention-Deficit/Hyperactivity Disorder" and may involve symptoms including inattention (not being able to keep focus), hyperactivity (excess movement that is not fitting to the setting), and impulsivity (hasty acts that occur in the moment without thought). *What is ADHD?*, AM. PSYCHIATRIC ASS'N (last visited Mar. 28, 2023), https://www.psychiatry.org/patients-families/adhd/what-is-adhd.

[5] Listing 12.11 is for Neurodevelopmental Disorders, and is defined as follows:
   A.  Medical documentation of the requirements of paragraph 1, 2, or 3:
      1. <u>One</u> or both of the following:
         a.  Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
         b.  Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
      2.  Significant difficulties learning and using academic skills; or
      3.  Recurrent motor movement or vocalization.
   AND

5

that, while the ALJ did determine that she had other severe impairments and proceeded with Steps Three through Five, this was not harmless error because it prevented her from later addressing all of Amanda's symptoms when determining Amanda's RFC. [*Id.* at 15.] Amanda argues that the ALJ relied on the testimony of one provider—Nurse Practitioner Jessica Jawidzik ("NP Jawidzik")—who stated that she was unsure if Amanda was experiencing "true ADHD [because she] does not report inattentiveness, only impulsivity," while ignoring several other pieces of evidence supporting the conclusion that Amanda does in fact suffer from ADHD. [*Id.* at 16 (citing Dkt. 7-11 at 49).] Amanda points to evidence that she was diagnosed with ADHD and prescribed Adderall to treat it, as well as notes from various medical and social services providers that she was experiencing symptoms of ADHD. [*Id.* at 16-17.] Amanda argues that if the ALJ had appropriately analyzed the evidence related to her ADHD and found it to be a severe impairment, a finding of disability necessarily would have followed, as her condition is severe enough to meet Listing 12.11. [*Id.* at 17-20.]

The Commissioner disagrees, arguing that substantial evidence supports the ALJ's determination that Amanda's ADHD was not an independent, severe impairment, and even so, that the ALJ continued to consider the impairment and any concomitant symptoms during the evaluation process. [Dkt. 15 at 8.] The Commissioner argues that the ALJ properly relied on NP Jawidzik's opinion that it was "unclear if [Amanda had] true ADHD," and that Amanda has failed to point to any other long-treating source refuting this assessment. [*Id.* at 9.] The Commissioner

---

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

argues that while Amanda points to a "host of symptoms that could possibly be attributed to ADHD, . . . this is nothing more than a call for the Court to reweigh the evidence, which it cannot do." [*Id.* at 10.] Further, even though the ALJ did not find ADHD to be a medically-determined severe impairment, the Commissioner argues that the ALJ considered symptoms possibly related to Amanda's ADHD when determining the RFC such that any alleged error would be harmless. [*Id.* at 11-12.] The Commissioner points to record evidence suggesting that Amanda is able to perform various activities independently and that her condition has improved with medication. [*Id.* at 13.] Finally, the Commissioner points to the opinions of Dr. Jeanne Yakin and Dr. Steven Fritz, who "expressly considered the relevant listing, and found that [Amanda] did not meet or equal this listing." [*Id.*]

At Step Two, the ALJ must determine the medical severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). While the ALJ is "not required to address every piece of evidence or testimony," she "must provide some glimpse into her reasoning" and "build an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). When an ALJ's decision provides "no path of reasoning for the Court to trace regarding the Step 2 determination that [a disorder] is not a medically determinable impairment suffered by [the claimant]," remand is required, as long as the error is not harmless. *See Dawson v. Berryhill*, No. 1:15-cv-01028-TWP-MPB, 2017 WL 1190508, at *5 (S.D. Ind. Mar. 31, 2017) (internal quotation marks omitted). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Accordingly, an ALJ's failure to mention, analyze, or discuss record medical evidence when determining whether a claimant has a certain medically determinable impairment is

7

erroneous. *See Dawson*, 2017 WL 1190508, at *5. The same is true when an ALJ fails to consider relevant evidence and reaches a conclusory finding with respect to whether a certain listing was met. *Josiah L. v. Kijakazi*, No. 1:21-cv-226, 2022 WL 203220, at *9 (N.D. Ind. Jan. 24, 2022). Whether a claimant has been prescribed medication for a mental condition is relevant to whether said claimant has a mental impairment and should be evaluated by the ALJ. *Gilbert ex rel. S.E. v. Colvin*, No. 12 C 6550, 2013 WL 4599348, at *7 (N.D. Ill. Aug. 29, 2013) (finding it "baffling" that an ALJ concluded the claimant did not have a mood abnormality in the face of prescribed psychiatric medications).

Because Step Two presents a threshold issue, and the ALJ's analysis will continue if even one severe impairment is found, an error in determining whether an impairment is severe may be harmless. *Curvin v. Colvin*, 778 F.3d 645, 649-50 (7th Cir. 2015). This is only true, however, when the ALJ subsequently "properly consider[s] all of [the claimant's] severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility[.]" *Id.* "[A]n ALJ's failure to address impairments at step two can be a harbinger of errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe or impairments she may have not addressed at all cause limitations in work capacity for purposes of formulating an RFC and then deciding whether the claimant can work." *Leslie T. v. Saul*, 4:19-cv-00113-SEB-DML, 2020 WL 6586658, at *3 (S.D. Ind. Oct. 19, 2020), *adopted by* 2020 WL 6583088 (S.D. Ind. Nov. 10, 2020). Failure to address a claimant's problems concentrating when formulating the RFC is grounds for remand. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (citing *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) ("[W]e reversed because the ALJ failed to include the claimant's significant problems concentrating in the RFC determination.").

8

In this case, the ALJ determined at Step Two that Amanda's ADHD "is a non-medically determinable impairment" based on NP Jawidzik's note that it is "unclear if [Amanda has] true ADHD" because she "does not report inattentiveness, only impulsivity."  [Dkt. 7-2 at 19.]  Accordingly, the ALJ found that there was "not a definitive diagnosis by an acceptable medical source."  [*Id.* at 19-20.]  The ALJ provided, however, that she was "cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses" and accordingly considered Amanda's "psychological symptoms and their effect on her functioning" together, rather than separately, "regardless of the diagnostic label attached."  [*Id.* at 20.]  At Step Three, the ALJ found that though Amanda reported having ADHD, "[t]reatment notes do not indicate significant concentration/attention deficits on mental status examination," and Amanda had only a moderate limitation with regard to concentrating, persisting, or maintaining pace.  [*Id.* at 21.]  The ALJ noted that "the allegations have not all been observed or consistent in the medical records, particularly as it relates to learning and concentration/attention," and that "attention deficits to the degree described in [the Third Party Function Report] is not documented in the treatment record."  [*Id.* at 24.]

The ALJ's analysis ignores several pieces of evidence indicating that Amanda has been prescribed medication for ADHD and has reported to both medical and non-medical professionals, or has been observed by the same as having, symptoms related to attention deficit and hyperactivity.  For example, Dr. Carol Lynn Childers found at an examination in July 2019 that Amanda needed an increase in her Adderall prescription due to increased symptoms of ADHD.  [Dkt. 7-11 at 104.]  In a November 2019 appointment, Dr. Childers also found that Amanda "needs her ADHD meds" after giving birth, that her ADHD was poorly controlled, and that Amanda was accordingly unable to read.  [*Id.* at 62.]  Even NP Jawidzik—whose opinion questioning "true

9

ADHD" is what the ALJ relied on—noted in a February 2020 visit that Amanda started taking Wellbutrin which "may help with [her] ADHD symptoms." [*Id.* at 70.]

Additionally, Dr. Yakin and Dr. Fritz considered Amanda's ADHD to be a severe medically determinable impairment, though both ultimately found that this impairment did not meet or equal a listing. [Dkt. 7-3 at 6, 21.] Several other medical and social services providers also indicated in their notes that Amanda had difficulty maintaining attention and concentration and that she sought assistance for her ADHD. *See, e.g.*, Dkt. 7-7 at 108 (noting Amanda's difficulty focusing and a pattern of forgetfulness); *Id.* at 196 (noting that Amanda had "trouble maintaining attention" during her appointment and that the clinician modeled patience and helped her cope with ADHD and anxiety); *Id.* at 58, 137, 165 (noting that Amanda presented with symptoms of ADHD); *Id.* at 178 (noting that Amanda had "[d]ifficulty retaining information necessary for follow-ups" and "[d]ifficulty concentrating on what is being discussed in [appointments]"); Dkt. 7-8 at 222-23 (noting that the nurse provided "socio-emotional support as [Amanda's] ADHD prevents her from effectively processing information and being able to focus," noting that she had difficulties focusing through her appointment due to her ADHD, looked through cabinets in the clinic room, and tried to play with the computer); *Id.* at 227-28 (noting that Amanda presented with "excessive energy and struggled to focus on the conversation with" the nurse); Dkt. 7-9 at 404 (noting that Amanda presented with "disorganized appearance and thoughts"); Dkt. 7-11 at 103 (Amanda reported that her "ADHD [was] acting up" with increased trouble focusing, and that she was very distractable).

The ALJ's failure to confront and address this evidence requires remand. Though the Court does not reweigh the evidence considered by the ALJ, nor is the ALJ required to address every single piece of evidence, remand is appropriate when the ALJ declines to consider entire lines of

evidence or provide analysis allowing the Court to trace her path of reasoning. Such is the case here, where the ALJ did not analyze the above-mentioned evidence when she determined that there was insufficient evidence to establish ADHD as a medically determinable impairment for Amanda. Nor can the Court say that the ALJ's error was harmless. By failing to adequately address Amanda's ADHD, the ALJ failed to account for Amanda's limitations with respect to attention and hyperactivity throughout the evaluation process, including in her assessment of Amanda's RFC.

### B. Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to substantively address Amanda's remaining arguments.

### IV.   CONCLUSION

For the reasons explained above, the Court **REVERSES** the Commissioner's decision denying Amanda benefits from the application date through the date of the ALJ's decision and **REMANDS** this case to the Social Security Administration. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 3/29/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lu Han
Social Security Administration
lu.han@ssa.gov

Kenneth R. Hiller
LAW OFFICES OF KENNETH HILLER PLLC
khiller@kennethhiller.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov